**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Twin City Fire Insurance Company, | No. CV-22-00489-TUC-JGZ |
| Plaintiff, | |
| v. | **Order Re: Motion for Summary Judgment** |
| DanceIt! Studio LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiff Twin City Fire Insurance Company's Motion for Summary Judgment in this declaratory action. (Doc. 29.) The Defendants, Alberto and Gabriela Valencia and DanceIt! Studio, LLC (collectively, "DanceIt!") and Andrea and Javier Perez, oppose the motion. Twin City seeks judgment declaring that: (1) it has no duty to defend Alberto and Gabriela Valencia, or DanceIt!, in a lawsuit brought in state court by Andrea and Javier Perez; and (2) the Valencias and DanceIt! are not entitled to indemnity from Twin City for any settlement or judgment in the lawsuit. (Doc. 1 at 6–7.) For the following reasons, the Court will grant summary judgment in favor of Twin City.

**I.     Introduction**

Alberto and Gabriela Valencia own and operate a fitness studio called DanceIt! in Tucson, Arizona. The studio offers dance fitness classes, including kickboxing, Zumba, yoga, and step aerobics. In December 2019, Andrea Perez participated in a kickboxing class at the studio and suffered injuries to her wrists while using a trampoline during the class. In 2021, Andrea and Javier Perez filed a lawsuit in state court against DanceIt! and the Valencias, alleging negligence ("State Court Action").

Twin City Fire Insurance Company ("Twin City"), which is not a party to the State Court Action, provided business liability insurance to the Valencias. Twin City filed this declaratory relief action seeking a determination that its policy does not require it to defend or indemnify the Valencias or DanceIt! in the State Court Action. (Doc. 1; Doc. 23.) In opposition to Twin City's motion for summary judgment, DanceIt! and the Perezes argue that the reasonable expectations doctrine precludes enforcement of the exclusions from coverage contained in the Twin City Policy. Defendants bear the burden of proving the applicability of the reasonable expectations doctrine at trial. *P.F. Chang's China Bistro, Inc. v. Fed. Ins. Co.*, CV-15-01322-PHX-SMM, 2016 WL 3055111, at *4 (D. Ariz. May 31, 2016) (citing *State Farm Fire & Cas. In. Co. v. Grabowski*, 150 P.3d 275, 277 (Ariz. App. 2007)).[1]

## II.     Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

A movant is entitled to judgment as a matter of law against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. In *Celotex*, the Supreme Court explained: "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element

---

[1]Because the Perezes stand in the shoes of DanceIt! for purposes of challenging the applicability of the insurance policy, the Perezes also bear the burden of proof.

- 2 -

of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322–23.

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Id.* In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. In reviewing the evidence, the court need only consider the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III. Undisputed Facts[2]

In 2018, Twin City issued an insurance policy to "Alberto & Gabriela Valencia" effective November 2, 2018 through November 2, 2019. (PSOF ¶ 11, Exh. 3.)

In 2019, Twin City issued a renewal policy to "Alberto & Gabriela Valencia," effective November 2, 2019 through November 2, 2020 (the "Policy" or "Renewal Policy"). (PSOF ¶ 10, Exh. 2.) The Renewal Policy was in effect at the time of Andrea Perez's injury. The first policy for 2018–19 and the Renewal Policy for 2019–20 contained the same three exclusions at issue in this case. (*Compare* Exh. 2 at 14, 55, 52, 104, 106 *with* Exh. 3 at 9, 58, 99, 101.)

One exclusion, entitled "Exclusion – Trampoline and Gymnastic Rebounding Devices," states: "This insurance does not apply to 'bodily injury' arising out of the: (a) ownership, (b) maintenance, (c) operation, or (d) use of any trampoline or gymnastic rebounding device." (Doc. 30-2 at 105 ("Trampoline Exclusion").)

A second exclusion, which is only applicable to Medical Expenses coverage, reads: "We will not pay expenses for 'bodily injury'" to "a person injured while practicing, instructing or participating in any physical exercises or games, sports or athletic contests."

---

[2]The facts are taken from Twin City's Statement of Facts ("PSOF") (Doc. 30). The DanceIt! Defendants and Perez Defendants do not dispute these facts. (Doc. 38; Doc. 40.)

(Doc. 30-2 at 63 ("Bodily-Injury Exclusion").)

A third exclusion, entitled "Exclusion – Class, Athletic or Sports Participants," states: "This insurance does not apply to 'bodily injury' to any person while practicing for or participating in: (1) Any sports, physical education, gymnastics, martial arts or other athletic-related class or program of instruction; or (2) Any sports, athletic contest, exhibition, recital or any similar activity." (Doc. 30-2 at 107 ("Exercise Exclusion").)

On December 19, 2019, Andrea Perez participated in a kickboxing class at the studio. (PSOF ¶ 4, Exh. 1 ¶ 11.) According to the complaint in the State Court Action, "the instructor told participants to jump onto a trampoline, perform an abdominal 'crunch' exercise, then jump off the trampoline and land on the floor. As Andrea Perez was jumping, the trampoline slipped on the wood-like flooring, flew out from underneath her, and she fell backwards onto the floor." (PSOF ¶¶ 5–6, Exh. 1 ¶¶ 13–14.) Perez landed on and fractured both of her wrists, sustaining "severe, permanent injuries to her wrists." (PSOF ¶ 7, Exh. 1 ¶¶ 15–16.)

On December 1, 2021, Andrea Perez and her husband, Javier Perez, filed a Complaint in Pima County Superior Court alleging the Valencias own and operate the dance and fitness studio known as DanceIt! The Perezes alleged that the Valencias and DanceIt! were negligent and, as a direct and proximate result of their negligence, Andrea "sustained serious injuries requiring medical and health care, past and future." (PSOF ¶¶ 1, 8–9, Exh. 1 ¶¶ 17–22.)

**IV.   Additional Facts**

The Defendants allege the following additional facts which the Court accepts as true for purposes of summary judgment.[3]

The landlord and property manager for the space leased by DanceIt! required liability insurance for the business to operate on the premises. (DanceIt! DSOF ¶ 4.)

Gabriela and Alberto Valencia obtained business insurance through Twin City's

---

[3] These additional facts are set forth in the DanceIt! Defendants' Separate Statement of Facts ("DanceIt! DSOF") (Doc. 38) and the Perezes' Controverting Statement of Facts (Doc. 40).

- 4 -

insurance agent Anthony Alvarado with Alvarado Insurance. (*Id.* ¶¶ 3, 8.) Gabriela met with Alvarado and they discussed her exercise business, the types of exercise training they do, including cardio exercise,[4] and what liability insurance they needed for the business. (*Id.* ¶ 3–4.) Gabriela explained to Alvarado the policy was required for her business and had to protect against liability claims. (*Id.* ¶ 5.) Alvarado assured Gabriela that the policy being sold to her was the policy they needed for their business. (*Id.* ¶ 9.)

Prior to the incident where Andrea Perez was injured, Gabriela had never read or reviewed her policy. (*Id.* ¶ 10.) In reviewing the Policy, Gabriela learned the Policy incorrectly lists herself and her husband, Alberto, individually, as insureds, although the insurance agent understood they needed liability insurance for their business. (*Id.* ¶ 12.) In addition, the policy wrongly lists the business as a "School – Fine Art." (*Id.* ¶ 14.)[5]

The Valencias relied on Alvarado and the insurance company to provide the right policy for their business as Gabriela spoke with the agent on several occasions, and he knew what business she had and what insurance she needed. (*Id.* ¶ 18.) If Gabriela had known the Policy did not protect her exercise business or the Policy excluded exercise or the use of exercise equipment, she would not have bought the Policy and continually made insurance payments. (*Id.* ¶ 19.)

**V.      Discussion**

Twin City argues it is entitled to judgment because the Trampoline Exclusion, the Exercise Exclusion, and the Bodily-Injury Exclusion "clearly and unambiguously preclude

---

[4] Although the DanceIt! Defendants cite Gabriela's declaration at ¶ 4 as support for their factual allegation that Gabriela told Agent Alvarado that her exercise business included "cardio exercising," (Doc. 38 at ¶ 3), Gabriela's declaration does not specifically reference cardio training or any other type of exercise offered at DanceIt! In her declaration, Gabriela averred only that she and Agent Alvarado "discussed my exercise business, the types of exercise training we do, and what insurance we needed for my business DanceIt! including liability insurance." *(*Doc. 38-1 at ¶ 4.) Gabriela's declaration does not state how she described her business to Alvarado.

[5] Apparently these same errors were also present in the "Business Owner's Application." The Application identifies the business as a "School – Fine Arts" and the insureds as Alberto and Gabriela Valencia. (Doc. 40-5 at 2.) No information is provided as to who completed the application. The document is typed and is unsigned. (Doc. 40-5.)

- 5 -

coverage for the State Court Action." Twin City asserts that the exclusions are prominent, do not use confusing language, and "are not subject to conflicting reasonable interpretations." (Doc. 29. at 5–6.) The DanceIt! and Perez Defendants acknowledge the existence of the Policy exclusions, but argue that the reasonable expectations doctrine precludes enforcement of the exclusions. (Doc. 37; Doc. 39.)

### A. Reasonable Expectations Doctrine

"The reasonable expectations doctrine relieves an insured from 'certain clauses of an agreement which he did not negotiate, probably did not read, and probably would not have understood had he read them.'" *Grabowski*, 150 P.3d at 279 (quoting *Darner Motor Sales, Inc. v. Universal Underwriters Ins. Co.*, 682 P.2d 388, 399 (Ariz. 1984), and citing Restatement (Second) of Contracts § 211 (1981)). "The doctrine applies only if two predicate conditions are present. First, the insured's "expectation of coverage must be objectively reasonable. Second, the insurer must have had reason to believe that the insured would not have purchased the policy if they had known that it included the complained of provision." *P.F. Chang's*, CV-15-01322-PHX-SMM, 2016 WL 3055111, at *4 (cleaned up). If both of the conditions are satisfied, "Arizona courts will not enforce even unambiguous boilerplate terms in standardized insurance contracts in a limited variety of situations." *Id.* (citing *Gordinier,* 742 P.2d at 283).

The Arizona Supreme Court has identified four limited situations in which the doctrine may apply:

> 1. Where the contract terms, although not ambiguous to the court, cannot be understood by the reasonably intelligent consumer who might check on his or her rights, the court will interpret them in light of the objective, reasonable expectations of the average insured;
>
> 2. Where the insured did not receive full and adequate notice of the term in question, and the provision is either unusual or unexpected, or one that emasculates apparent coverage;
>
> 3. Where some activity which can be reasonably attributed to the insurer would create an objective impression of coverage in the mind of a reasonable insured;

> 4. Where some activity reasonably attributable to the insurer has induced a particular insured reasonably to believe that he has coverage, although such coverage is expressly and unambiguously denied by the policy.

*Averett v. Farmers Ins. Co. of Ariz.*, 869 P.2d 505, 507 (Ariz. 1994); *see also Gordinier v. Aetna Cas. & Sur. Co.*, 742 P.2d 277, 283 (Ariz. 1987) (adopting Restatement § 211). "[I]f the drafting party had 'reason to believe' that the signing party would not have accepted a particular term, the court may strike that term from the agreement." *Id.* (quoting *Gordinier*, 742 P.2d at 283).

### B. Application

There is a genuine issue of material fact exists as to whether the reasonable expectations doctrine should apply to prevent enforcement of the Bodily-Injury Exclusion and Exercise Exclusion. Defendants provide evidence that Gabriela met with and told the insurance agent that DanceIt! was an exercise studio and requested liability insurance. According to Gabriela's testimony, the agent assured Gabriela that the policy he was selling her would provide the coverage she needed. These facts, if believed, could support a finding that the Valencias had an objectively reasonable expectation that Twin City would cover claims for bodily injuries sustained during exercise classes at the studio. These facts would also support a finding that the agent had reason to believe that the Valencias would not have purchased the Policy if they had known that it did not cover bodily injuries sustained during exercise classes at the studio. Thus, the Court will deny summary judgment to the extent it is requested based on the Bodily-Injury and Exercise Exclusions.

In contrast, the Defendants do not claim that anyone told Agent Alvarado about the use of trampolines at the studio. Thus, the Court will consider whether there is sufficient evidence to support a finding that Gabriela expected coverage for the use of a trampoline or other rebounding device at the studio or that Agent Alvarado had reason to believe the Valencias would not have purchased the Policy if they had known about the Trampoline Exclusion.

//

1. Objectively Reasonable Expectation of Coverage for a Trampoline Injury

Upon review of the record, the Court concludes that the DanceIt! Defendants' expectation of coverage for trampoline injuries such as the one in the State Court Action is not objectively reasonable. The Valencias did not tell the agent that DanceIt! owned, maintained, used or expected to use, trampolines of any kind. (Doc. 40-2 at 61:2–6.) Noticeably, Gabriela, in her declaration, does not claim that she told Agent Alvarado about the use of a trampoline. She also does not claim that she told Agent Alvarado about any specific type of fitness class from which he might have reasonably inferred that trampolines or rebounding devices might be used. Instead, she says she discussed "my exercise business, [and] the types of exercise training we do." (Doc. 38-1 at ¶ 4.)[6] This seems consistent with the lack of evidence regarding the regularity of the use of trampolines at the studio or even when the studio first began using trampolines. At her deposition, Gabriela said DanceIt! had three trampolines: one professional trampoline that she had purchased and two trampolines that Andrea Perez had purchased at the swap meet and brought into the studio. (Doc. 40-2 at 60:18–23, 61:25–62:16.) Gabriela did not remember when exactly she purchased the professional trampoline, or when Perez brought the other two trampolines into the studio. It is also not clear whether DanceIt! utilized trampolines at the time the initial insurance policy was purchased. The facts, taken in the light most favorable to Defendants, are insufficient to show that the Valencias reasonably expected the Policy would cover bodily injury sustained by DanceIt! clients who were injured while using a trampoline. Thus, the Court will grant summary judgment to Twin City based on the Policy's Trampoline Exclusion.

2. Reason to Believe that the Valencias Would Not Have Purchased the Policy if They Had Known About the Trampoline Exclusion

Summary judgment in favor of Twin City is appropriate for the additional reason that Defendants fail to provide evidence sufficient to show Twin City had reason to believe

---

[6] Assuming Gabriela told Alvarado that fitness classes at DanceIt! included kickboxing, Zumba, yoga, and step aerobics, there is no evidence that trampolines are regularly used in any of these types of classes.

the Valencias would not have purchased the Policy if they had known about the Trampoline Exclusion. Arizona courts consider several factors in determining whether the drafter had reason to believe that the signing party would not have assented to an objectionable term: (1) the parties' prior negotiations, (2) the circumstances of the transaction, (3) the fact that the term is bizarre or oppressive, (4) the fact that the term eviscerates the non-standard terms to which the parties explicitly agreed, and (5) whether the term eliminates the dominant purpose of the transaction. *See Grabowski*, 150 P.3d at 280 (citing *Darner*, 682 P.2d at 397, and Restatement § 211 cmt. f). Arizona courts have also considered whether the challenged policy provision can be understood if the customer does attempt to check on his rights, and any other relevant facts. *See Harrington v. Pulte Home Corporation*, 119 P.3d 1044, 1051 (Ariz. App. 2005).

As to the first and second factors, there is no evidence from which the Court can infer Twin City had reason to believe the Valencias would not have bought the Policy had they known about the Trampoline Exclusion. The parties' prior negotiations and the circumstances surrounding the transaction are limited to evidence that the Valencias sought liability coverage from Agent Alvarado because their landlord required them to and because they were concerned about claims from the public and customers. The Valencias made Agent Alvarado aware that DanceIt! was a fitness studio. However, in interactions with Agent Alvarado, Gabriela did not mention the use of trampolines and she did not reference any specific cardio exercise which might have alerted Alvarez that trampolines could be used in fitness classes at the studio.

For the same reasons, the Court does not find the third, fourth, and fifth factors favor the Defendants. As Defendants state, the "primary and basic purpose" of the insurance policy was to provide financial protection to a fitness studio in "one of the available fitness classes." (Doc. 39 at 6.) And while Twin City should have known that the application of the Bodily-Injury and Exercise Exclusions would be contrary to that expectation, there is no evidence that Twin City would have been similarly aware that the Trampoline Exclusion would be contrary to the Valencias's expectations. Again, there is

no evidence that Twin City knew that DanceIt! offered classes involving trampolines or offered any specific type of exercise which would have alerted Twin City that trampolines could be used in its fitness classes. There is no evidence that DanceIt! was utilizing trampolines at the time the Policy was purchased. Consequently, it cannot be said that the Trampoline Exclusion was "bizarre" or "oppressive," or that it would wholly and completely negate the reason the policy was purchased. And, the Trampoline Exclusion does not eviscerate any non-standard term to which the parties explicitly agreed.

Finally, the Defendants do not dispute that the Policy exclusions could be understood if the Valencias had attempted to check on their rights, although Defendants argue "the exclusions were buried near the end of the document and there was nothing in the policy itself that drew attention to the athletic activity and trampoline exclusion from the dozens of other endorsements and exclusions added to the policy by Twin City." (*Id.* at 7.) Arizona courts have considered whether a challenged policy provision can be understood if the customer does attempt to check on his rights, and any other relevant facts, *see Harrington,* 119 P.3d at 1051. Here the Trampoline Exclusion was readily understandable, and Gabriela admits in her affidavit that the Valencias never checked on their rights.

In sum, Defendants fail to point to evidence sufficient to show that Twin City had any reason to believe that DanceIt! had trampolines, needed coverage for trampolines, or that the Valencias would not have purchased the Policy if they had known about the Trampoline Exclusion. Indeed, neither the DanceIt! nor the Perez Defendants explain how the agent would have had reason to know the Valencias would not have purchased the Policy if they had known about the Trampoline Exclusion. Therefore, for this additional reason, the Court finds that Plaintiff is entitled to summary judgment; Defendants have not carried their burden of showing the reasonable expectations doctrine applies. *See P.F. Chang's*, CV-15-01322-PHX-SMM, 2016 WL 3055111, at *4.

### C. DanceIt! Defendants' Additional Arguments

The DanceIt! Defendants argue that Twin City's filing of its motion for summary

judgment is "premature, at best, and is indicative of bad faith." (Doc. 37 at 3.) Twin City's motion is not "premature." Rule 56(b) allows a party to file a motion for summary judgment "at any time until 30 days after the close of all discovery." Rule 56, Fed. R. Civ. P. Moreover, in cases like the instant one, where the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the "pleadings, depositions, answers to interrogatories, and admissions on file." *Celotex Corp.,* 477 U.S. at 324. Notably, although DanceIt! criticizes Twin City for filing its motion for summary judgment before the completion of discovery, DanceIt! does not ask for additional time to take discovery to enable it to present facts essential to justify its opposition to the motion, as Rule 56 allows it to do. *See* Fed. R. Civ. P. 56(d).

For the same reasons, the Court rejects DanceIt!'s argument that Twin City is not entitled to summary judgment because its Motion "completely ignores the reasonable expectations doctrine" set forth in their counterclaim asserted in their Answer.[7] (Doc. 24.) It is the Defendants' burden to assert and prove that the reasonable expectations doctrine applies. *See P.F. Chang's*, 2016 WL 3055111, at *4 ("The insured bears the burden of proving the applicability of the reasonable expectations doctrine at trial.").

Lastly, the DanceIt! Defendants argue their counterclaims for misrepresentation, breach of contract, and bad faith are not addressed by Twin City, "[t]here is no evidence that Twin City has conducted a coverage investigation," and Twin City has "ignored the Counterclaim[s] and proceeded on moving for summary judgment." (Doc. 37 at 6.) This, according to the DanceIt! Defendants, shows that "Twin City knows at this point it is acting in bad faith by refusing to acknowledge coverage." (*Id.*) Defendants' counterclaims are not addressed by any party in the briefing on the pending motion for summary judgment. It appears that the counterclaims may be resolved by the Court's ruling on the coverage issues presented in this motion.

//

---

[7]DanceIt! asserts misrepresentation, breach of contract, and bad faith counterclaims. (Doc. 37 at 1.)

- 11 -

**VI.     Conclusion**

For the foregoing reasons, the Court concludes Plaintiff Twin City is entitled to a declaratory judgment that it owes no duty to defend or indemnify the Valencias or DanceIt! under the Policy.  Accordingly,

**IT IS ORDERED** Plaintiff Twin City's Motion for Summary Judgment (Doc. 29) is **GRANTED**.

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment in favor of Plaintiff Twin City declaring that Twin City owes no duty to defend or indemnify the Valencias or DanceIt! under the Policy.

**IT IS FURTHER ORDERED**  setting a telephonic status conference on **Tuesday, February 6, 2024 at 2:00 P.M.**  The parties should be prepared to discuss whether the Court's ruling resolves all remaining claims in this case.  The parties shall call 888-363-4735 at the exact time of the hearing; the access code is 3386213.

Dated this 31st day of January, 2024.

Jennifer G. Zipps
United States District Judge